832 F.2d 965
 44 Fair Empl.Prac.Cas. 1875,
44 Empl. Prac. Dec. P 37,491
Michael FRIEDEL, James McCarthy, and Brian J. Ott,
Plaintiffs-Appellants,
v.
CITY OF MADISON, Morlynn Frankey, and Colonial Penn
Insurance Company, Defendants-Appellees.
 No. 86-3067.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 2, 1987.
Decided Oct. 13, 1987.
 
 Barrett J. Corneille, Bell, Metzner & Gierhart, S.C., Madison, Wis., for plaintiffs-appellants.
 Barbara J. Swan, Brynelson Herrick Bucaida Dorschell & Armstrong, Madison, Wis., for defendants-appellees.
 Before BAUER, Chief Judge, COFFEY, Circuit Judge, and ESCHBACH, Senior Circuit Judge.
 ESCHBACH, Senior Circuit Judge.
 
 
 1
 Three white male police training cadets at the training academy for the City of Madison were dismissed for cheating on exams. They brought an action in district court under 42 U.S.C. Secs. 1981, 1983, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq., alleging that the City of Madison and Inspector Morlynn Frankey (the head of the Division of which the police academy was a part) had intentionally discriminated against them on the basis of race and sex.[1] The plaintiffs also alleged that Colonial Penn Insurance Company ("Colonial") had issued liability insurance for the City of Madison and its employees, and that by reason of this policy Colonial was liable to plaintiffs for any damages. The district judge granted summary judgment in favor of the city and the other defendants, and the plaintiffs now appeal. The plaintiffs' showings in this action were in crucial respects not based on the personal knowledge of the affiant, failed to show affirmatively the affiant's competence to testify, and failed to set forth facts that would be admissible in court. In addition, the defendants in this case have offered legitimate, nondiscriminatory reasons for the discharge of plaintiffs, and have sufficiently supported those reasons with specific facts shown by affidavits made on personal knowledge regarding evidence that would be admissible in court. Plaintiffs have not been able to show that there is any genuine factual dispute regarding defendants' reasons for dismissing the recruits. We will affirm the district court.[2]
 
 
 2
 * The three plaintiffs in this case, Michael Friedel, James McCarthy, and Brian J. Ott, are all white males who were hired in October of 1984 as "probationary" police officers in training at the City of Madison's police recruit academy. The academy is part of a division of the Police Department headed by Inspector Morlynn Frankey. The plaintiffs alleged in their amended complaint that the City of Madison Police Department "received evidence that many or all of the cadets in the Academy during 1984 and 1985 were exchanging answers during Academy examinations" and that the Department then conducted an investigation into this alleged activity. Amended Complaint at 2. The amended complaint further alleges that the three plaintiffs, all white males, were discharged and the Department "informed these three individuals that they were discharged because of cheating on Academy examinations." Id. at 3. No other cadets were discharged even though, according to plaintiffs' allegations, "the defendants obtained evidence that most or all of the cadets had exchanged answers during examinations, and that the exchanging of answers had been commonplace in previous academy classes." Id. The plaintiffs alleged that Inspector Frankey and the Department "have established and enforced a policy of discrimination against white male police officers and white male cadets in the Academy, and the termination of the above-named plaintiffs was effected in furtherance of that policy and with either the tacit or explicit approval of the City of Madison and the defendant Morlynn Frankey." Id. at 4. The plaintiffs also alleged that Inspector Frankey "induced the City of Madison to terminate the plaintiffs' employment as City of Madison police officers by falsely claiming that only the plaintiffs had cheated on Academy examinations or by causing others to falsely accuse the plaintiffs of such cheating and by providing unfair and untruthful evaluations of the plaintiffs' performance or causing others to provide such unfair or untruthful evaluations." Id. at 5.
 
 
 3
 Plaintiffs also asserted that the Department, and in particular, Inspector Frankey, had in the past engaged in allegedly discriminatory practices in the "supervision and promotion of white male police officers and in the training, testing, and evaluation of such cadets at the academy." Id. at 3-4.
 
 
 4
 After nine months of discovery defendants filed a motion for summary judgment with accompanying affidavits on May 9, 1986. Plaintiffs' duty in responding to the motion was to identify any disputed and material factual issues, and to support their argument by specific citation to any support they believed existed in the record. Plaintiffs failed in many instances to provide the necessary citations, especially those citations (if any existed) that might have allowed the judge to conclude that plaintiffs' support was based on personal knowledge and on evidence that would be admissible in court. In addition, the plaintiffs in their response characterized their factual assertions as proposed findings of fact rather than directly arguing the existence of disputed and material factual issues.
 
 
 5
 Discovery then continued for five months beyond the close of the briefing period on summary judgment. The record discloses no motion on the part of plaintiffs seeking a continuance of the summary judgment motion in order to allow plaintiffs to attempt to gain any further facts, or file any further affidavits or materials, essential to its opposition to the motion. See Fed.R.Civ.P. 56(f); Taylor v. Gallagher, 737 F.2d 134, 137 (1st Cir.1984); Over the Road Drivers, Inc. v. Transport Insurance Co., 637 F.2d 816, 821 (1st Cir.1980); see also Pan-Islamic Trade Corp. v. Exxon Corp., 632 F.2d 539, 549 (5th Cir.1980), cert. denied, 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981). The plaintiffs' decision not to ask for a continuance evinces their willingness to stand on the submissions they had already made. Taylor v. Gallagher, 737 F.2d at 137; Over the Road Drivers, 637 F.2d at 821.
 
 
 6
 On November 17, 1986, the district court granted the defendants' motion for summary judgment and dismissed the plaintiffs' action with prejudice. The district court implicitly determined that the defendants had provided sufficient support for its motion to allow summary judgment in the absence of a response that set forth specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e). The district court determined that much of the plaintiffs' alleged support in opposition to summary judgment failed to meet the evidentiary requirements of Rule 56(e). It further determined that, even accepting the faulty evidentiary support, the plaintiffs had failed to set forth any specific facts raising a genuine issue for trial. In particular, the district court determined that while it was "undisputed that there was some cheating by recruits other than plaintiffs" it was also nevertheless undisputed that "the cheating by these other recruits was not as extensive as that engaged in by plaintiffs and that the other recruits were disciplined for their actions." Mem. Op. at 18. The plaintiffs now appeal the entry of summary judgment for the defendants.[3]II
 
 A.
 
 7
 The history of this case in the district court provides an object lesson in how not to respond to a motion for summary judgment. The district court provided as an attachment to its pretrial conference order a copy of the court's required procedures for the handling of summary judgment motions. Out of an abundance of caution we would have hoped unnecessary, the judge noted explicitly in her order that "[c]ounsel are to observe the court's procedures for the filing of summary judgment motions, a copy of which is attached." Pretrial Conference Order at 3 (Nov. 7, 1985). The instructions specifically required pinpoint citations to the record in support of every factual proposition, and reminded the parties that the materials cited must satisfy the evidentiary dictates of Rule 56(e). They also required, in accordance with Rule 56(e), that the party opposing summary judgment respond by setting "forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). They further made explicit the nonmovant's responsibility to point to any disputed facts and support its assertions. Plaintiffs' counsel recited their obligation to establish genuine issues of disputed fact in their response but instead suggested their own proposed findings of fact and conclusions of law.
 
 
 8
 This, of course, is not a substantive problem in respect to the proposed findings of fact in plaintiffs' response. The plaintiffs clearly meant at least that there was support for their proposed facts, and may have believed that support to be uncontested. Thus we have reviewed the proposed findings as if they were assertions of genuine issues of material fact, as did the district judge. We have also considered the assertions of disputed fact raised by the plaintiffs' briefs on appeal. We have not, however, attempted to raise and consider alleged disputed fact issues not identified by the plaintiffs. It is not the court's duty on appeal to wade through the record and make arguments for either party, American Can Co. v. Mansukhani 814 F.2d 421, 425 (7th Cir.1987); Sanchez v. Miller, 792 F.2d 694, 703 (7th Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 933, 93 L.Ed.2d 984 (1987), and plaintiffs were repeatedly and expressly notified of their obligations.
 
 
 9
 In addition to this misunderstanding of their role the plaintiffs were fatally remiss in citing to the district court the portions of the record that they claimed supported their assertions. There was at least potential support for some of plaintiffs' assertions in portions of the record not cited in their response and not attached to the affidavit of plaintiffs' counsel. Not only did this failure to cite to the record or attachments fail to satisfy the explicit instructions of the district court, it also failed to satisfy the explicit requirements of Federal Rule of Civil Procedure 56(e), which provides, in pertinent part, that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that affiant is competent to testify to the matters stated therein." See also Downes v. Beach, 587 F.2d 469, 471-72 (10th Cir.1978). Plaintiffs have, with respect to various assertions in its affidavit, failed to satisfy each of these requirements.
 
 
 10
 The only affidavit provided was that of plaintiffs' counsel. To this affidavit the plaintiffs attached a number of interviews of police recruits performed by a police official and not taken under oath. Plaintiffs also attached other documents that included materials not supported by sworn statements on the basis of personal knowledge, and in some cases would not be admissible in court. The use of affidavits by counsel is in certain carefully confined situations undoubtedly appropriate, but it is a tactic fraught with peril, and counsel must remember that the requirements of Rule 56(e) are set out in mandatory terms and the failure to comply with those requirements makes the proposed evidence inadmissible during the consideration of the summary judgment motion. Supporting materials designed to establish issues of fact in a summary judgment proceeding "must be established through one of the vehicles designed to ensure reliability and veracity--depositions, answers to interrogatories, admissions and affidavits. When a party seeks to offer evidence through other exhibits, they must be identified by affidavit or otherwise made admissible in evidence." Martz v. Union Labor Life Insurance Co., 757 F.2d 135, 138 (7th Cir.1985); see also, e.g., Powers v. Dole, 782 F.2d 689, 696 (7th Cir.1986). Plaintiff's affidavit is in several instances insufficient to satisfy the requirements established by the plain language of the rule.
 
 
 11
 Among other submissions, much of the "evidence" offered by the plaintiffs in support of their opposition to the motion for summary judgment is based on what this or that person "heard" from another or "felt" to be the case. The plaintiffs pointed, for example, to the statements of two officers who had heard from others that some female officers had been admitted to the recruit academy without passing the running requirement. These statements are both inadmissible hearsay. In another example, a recruit testified that she thought a lot of other recruits believed that it was permissible to exchange answers as long as they didn't get caught. This is also inadmissible hearsay. (In addition, we are somewhat curious as to why the plaintiffs rely so heavily on this statement. They were caught.) Thus a good portion of the evidence provided by plaintiffs exhibits potentially serious hearsay and other evidentiary problems and runs against the literal requirements of Federal Rule of Civil Procedure 56(e).
 
 
 12
 Plaintiffs have also argued on appeal that the recruits verified the accuracy of the transcripts during their depositions. This appears to be at least partially correct. Plaintiffs, however, failed in their duty under Rule 56(e) to provide this information to the district judge in their response to the motion for summary judgment. Instead, they merely provided an affidavit of plaintiffs' attorney, and that affidavit claimed no personal knowledge that the transcripts were those of the recruits during the first interviews (and we do not see how it could). Smokowicz Affidavit (June 5, 1986). That was insufficient. Plaintiffs did not even refer the district judge to the deposition references, or explain, in the case of depositions that they were planning to take, that they would seek to provide the necessary evidentiary foundation later.
 
 
 13
 Plaintiffs also failed to follow the command of Rule 56(e) that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." While the size of records, such as this one, often makes attachment physically difficult or impossible, it makes specific and accurate citation to sworn or certified documents in the record imperative. Thus, while the record in the case in some few instances may have provided the necessary foundation evidence to allow consideration of the transcripts plaintiffs did not provide this to the district court, and the court is only required to look at the entire record made on summary judgment. See Fed.R.Civ.P. 56; Downes v. Beach, 587 F.2d 469, 471-72 (10th Cir.1978).
 
 
 14
 In all fairness, we note that defendants' counsel also submitted some of the interview transcripts with statements containing substantially the same defects in her second affidavit. Swan Affidavit at 2 (June 18, 1986). To the extent that affidavits are insufficient under Rule 56(e), they must not be considered on summary judgment. E.g., Automatic Radio Manufacturing v. Hazeltine Research, 339 U.S. 827, 831, 70 S.Ct. 894, 896, 94 L.Ed. 1312 (1950); Williamson v. United States Department of Agriculture, 815 F.2d 368, 383 (5th Cir.1987); Colan v. Cutler-Hammer, Inc., 812 F.2d 357, 365 n. 14 (7th Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 79, 98 L.Ed.2d 42 (1987); Gordon v. Watson, 622 F.2d 120, 123 (5th Cir.1980); Washington Post Co. v. Keogh, 365 F.2d 965, 971 (D.C.Cir.1966), cert. denied, 385 U.S. 1011, 87 S.Ct. 708, 17 L.Ed.2d 548 (1967); see also Scientex Corp. v. Kay, 689 F.2d 879 (7th Cir.1982) (dicta).[4] We recognize that the transcripts on their face give all appearances of being a portion of an interview by the Department, but the district courts are not required to speculate about the nature of the documents received on summary judgment and the parties should not have placed the district court below in that position.
 
 
 15
 Taken together, these evidentiary failings undercut the most crucial aspects of plaintiffs' opposition to summary judgment. Had the defendants not sufficiently supported their own motion for summary judgment, this would not matter. See Fed.R.Civ.P. 56(e) (burden only shifts to nonmovant to show a genuine issue of disputed and material fact when the movant's motion is properly supported and carries burden of showing no material and disputed fact issue and entitlement to judgment as a matter of law). Without detailing the defendants' showings one by one, it suffices to note that the defendants have offered as a nondiscriminatory rationale for the discharge the cheating and mendacity of the three plaintiffs. It has supported this rationale by submitting material sworn to on personal knowledge (with the exception noted above) that would be admissible as evidence showing that the plaintiffs admitted to the investigating police officers that they exchanged answers on written classroom examinations, that they denied exchanging these answers on particular occasions, and that other recruits also implicated plaintiffs in several instances of exchanging answers on written classroom examinations. The evidence on summary judgment also shows that the Department investigations suggested that the plaintiffs were much more heavily involved in cheating than the investigations revealed any female or minority recruit to be, and that, by and large, instances of nonplaintiff cheating were instigated by the plaintiffs. Thus the defendants carried their burden of showing their entitlement to summary judgment and the burden shifted to the plaintiffs to establish, if they could, the existence of a disputed issue of material fact. Plaintiffs' evidentiary errors undermine their attempts to raise a genuine factual issue. In addition, however, plaintiffs have failed to establish a genuine issue of fact even considering the faulty submissions.
 
 B.
 
 16
 This action is based on claims of reverse race and sex discrimination under Title VII (42 U.S.C. Sec. 2000e et seq.) and 42 U.S.C. Sec. 1983, and claims of reverse race discrimination under 42 U.S.C. Sec. 1981. See McDonald v. Sante Fe Trail Transportation Co., 427 U.S. 273, 278-80, 96 S.Ct. 2574, 2578-79, 49 L.Ed.2d 493 (1976). When the plaintiff alleges intentional discrimination, as here, it is clear that the same standards in general govern liability under sections 1981, 1983, and Title VII. E.g., American Nurses Association v. State of Illinois, 783 F.2d 716, 722-23 (7th Cir.1986); Yarbrough v. Tower Oldsmobile, Inc., 789 F.2d 508, 511 (7th Cir.1986); Ramsey v. American Air Filter Co., 772 F.2d 1303, 1307 (7th Cir.1985). In order to prevail under these provisions a plaintiff must establish that he or she has been the victim of intentional discrimination. E.g., Cooper v. Federal Reserve Bank of Richmond, 467 U.S. 867, 875, 104 S.Ct. 2794, 2799, 81 L.Ed.2d 718 (1984); Yarbrough, 789 F.2d at 510. This may be done in a typical discrimination action either by direct proof or via the method of indirect proof outlined in Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-56, 101 S.Ct. 1089, 1093-95, 67 L.Ed.2d 207 (1981) and McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).
 
 
 17
 McDonnell and its progeny have made it clear that the elements of a prima facie case will vary depending upon the particular facts of various allegations of discrimination. McDonnell, 411 U.S. at 802 n. 13, 93 S.Ct. at 1824. In this action white male plaintiffs allege race and gender discrimination in the enforcement of work rules.[5] Even if we assume that plaintiffs have brought forward specific facts that would, if proven, establish a prima facie case, the defendants have provided (and have properly supported, as plaintiffs appear to admit) a legitimate nondiscriminatory rationale for the dismissal. The plaintiffs have in response failed to provide any factual basis for arguing that the rationale was no more than a pretext for race or gender discrimination. Plaintiffs have instead relied upon mere allegations, conclusory statements, and assertions of belief rather than fact, and such material cannot serve to raise a genuine dispute on a question of material fact. See, e.g., Powers v. Dole, 782 F.2d 689, 694-96 (7th Cir.1986); Over the Road Drivers, Inc., 637 F.2d at 819; Wang v. Lake Maxinhall Estates, Inc., 531 F.2d 832, 835 n. 10 (7th Cir.1976); Ashwell & Co. v. Transamerica, Inc., 407 F.2d 762, 766 (7th Cir.1969).
 
 
 18
 We recognize, of course, that the issue of discriminatory intent is often only subject to proof by circumstantial evidence, which makes summary judgment a seldom useful tool for resolving such issues. See Powers v. Dole, 782 F.2d 689, 694 (7th Cir.1986); Stumph v. Thomas & Skinner, Inc., 770 F.2d 93, 97-98 (7th Cir.1985). This court must review the entire summary judgment record on a de novo standard and must reverse and remand if it concludes that "inferences concerning material facts contrary to those of the trial court may be drawn." Bartman v. Allis-Chalmers, 799 F.2d 311, 312 (7th Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 1304, 94 L.Ed.2d 160 (1987); accord Brock v. American Postal Workers Union, Chicago Local, 815 F.2d 466, 469 (7th Cir.1987). Nevertheless, if the plaintiffs, as here, set forth "no indications of motive and intent supportive of his position," summary judgment in favor of the defendant may still be proper. Munson v. Friske, 754 F.2d 683, 690 (7th Cir.1985); accord Powers, 782 F.2d at 694-97 (affirming the grant of summary judgment in a Title VII action). In this action the plaintiffs have provided no specific facts that raise a contested and material factual issue, even after drawing all reasonable inferences in favor of the nonmovant. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); Bartman, 799 F.2d at 312-13; Powers, 782 F.2d at 693-94. In such a case summary judgment is appropriate. E.g., Brock, 815 F.2d at 469; Bartman, 799 F.2d at 312-13; Powers, 782 F.2d at 694; Klein v. Trustees of Indiana University, 766 F.2d 275, 283 (7th Cir.1985); Munson, 754 F.2d at 690; Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir.), cert. denied, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983).
 
 
 19
 The record in this case fails to reveal even a shred of direct evidence of discrimination on the basis of race or gender in the dismissal of the plaintiffs.[6] Thus each plaintiff may only prevail by eliminating through its prima facie case the most common nondiscriminatory reasons for a discharge, see, e.g., Burdine, 450 U.S. at 253-54, 101 S.Ct. at 1094; Furnco, 438 U.S. at 575-78, 98 S.Ct. at 2949-50, and then by answering any other alleged and properly supported nondiscriminatory rationales offered by the employer with evidence showing that the employer's proffered and adequately supported nondiscriminatory rationales are merely pretexts for race or gender discrimination. See, e.g., Cartegena v. Secretary of the Navy, 618 F.2d 130 (1st Cir.1980); cf. Christensen v. Equitable Life Assurance Society of the United States, 767 F.2d 340 (7th Cir.1985) (reversing the denial of a motion for J.N.O.V. because the employee had failed to satisfy his burden of showing that the employer's nondiscriminatory reason for discharge was pretextual), cert. denied, 474 U.S. 1102, 106 S.Ct. 885, 88 L.Ed.2d 920 (1986).
 
 
 20
 Before assessing plaintiffs' proposed genuine issues of material fact it is important to emphasize that, as a matter of law, plaintiffs cannot establish liability simply by showing that the Department was unclear in its cheating policy. Nor could they establish liability even by showing that the Department dismissed the plaintiffs because it unintentionally or inaccurately misapplied its own cheating policy. See, e.g., Pollard v. Rea Magnet Wire Co., 824 F.2d 557, 558-59 (7th Cir.1987); American Nurses Association, 783 F.2d at 722; Ustrak v. Fairman, 781 F.2d 573, 576-77 (7th Cir.1986). Therefore, whether plaintiffs or any of the other recruits actually cheated on the written classroom examinations is not a question we need to decide. The question is instead whether the Madison Police Department or Inspector Frankey intended to discriminate against the plaintiffs on the basis of their race or gender (race only in the case of section 1981) when the Department chose to dismiss them, not simply that it erred in applying or disseminating its cheating policy. See, e.g., Pollard, at 558-59; American Nurses Association, 783 F.2d at 722; Ustrak, 781 F.2d at 576-77. Neither sections 1981 and 1983 nor Title VII makes an employer liable for simply erroneous or arbitrary decisions. Thus this case turns on the Department's investigation into the recruit class.
 
 
 21
 Plaintiffs contended to the district court and argue to this court that, while they admitted to exchanging answers on written classroom examinations, this was not cheating. In support of this claim they offered several specific facts that they claimed indicated that exchanging answers was permissible. Instructors in the Department had sometimes given recruits questions and answers that would appear on written exams prior to administering the exams. Recruits were also uncertain about what was appropriate procedure in performing field exercises. Recruits had also been told that they could bring in formulas to aid them on one exam involving radar. The district judge determined that these assertions of specific fact were irrelevant to the question of whether the recruits had been informed that exchanging answers on written classroom examinations constituted cheating. We agree.
 
 
 22
 In addition, whether or not the exchange of answers was cheating is itself not a material fact question under the circumstances of this case. As we have just said, the Department would not be liable even if it had misapplied its own policy and arbitrarily or erroneously dismissed the plaintiffs. The question is instead whether there is any evidence of discrimination against the plaintiffs based on their race or gender. If the Department used its cheating policy as a pretext to discriminate against the plaintiffs because of their race or gender, the Department would be liable. While it is up to an individual employer to decide what disciplinary action cheating deserves, the criterion for making such a decision must be " 'applied, alike to members of all races,' and Title VII is violated if ... it is not." McDonald, 427 U.S. at 283, 96 S.Ct. at 2580.
 
 
 23
 Plaintiffs have indeed alleged that the Department treated similar cheating situations involving minority or female recruits dissimilarly. Plaintiffs argue that "female and minority recruits also engaged in nearly identical conduct" to that of plaintiffs. Reply Brief at 9; see Amended Complaint at 3. In order to reach a jury on this question the plaintiffs needed only to offer specific facts suggesting that the police knew that other recruits were involved in cheating to the same extent as the plaintiffs. The plaintiffs have not, however, provided any specific facts that even arguably suggest that the police knew that minority and or female recruits were engaged in acts against the employer of "comparable seriousness," McDonald, 427 U.S. at 283 n. 11, 96 S.Ct. at 2580 n. 11; McDonnell Douglas, 411 U.S. at 804, 93 S.Ct. at 1825, to the acts of plaintiffs. Plaintiffs have failed to support their bare contention that the police knew of such recruits, and the mere belief, without any factual support, that the police knew of such recruits and failed to discharge does not establish a genuine issue of material fact. Powers, 782 F.2d at 695.
 
 
 24
 Again, the question is not whether the other recruits and the plaintiffs actually cheated to the same extent; it is whether the police investigations revealed similar evidence of cheating on the part of the plaintiffs and the other recruits and chose to discharge the white males but retain minority and female recruits. See, e.g., Ustrak, 781 F.2d at 576-77. The undisputed facts show that the plaintiffs admitted in the internal investigations to being involved in many more instances of exchanging answers than any other recruit admitted to being involved in (with the possible exception of another white male recruit--who was not dismissed). It is difficult to provide an exact count of the number of admissions of exchanging answers the plaintiffs made; some of the admissions may cover several instances of exchanging answers. The record on summary judgment establishes that there is no dispute, however, that the plaintiffs admitted to exchanging answers in many more instances than any of the other recruits. There is also no doubt that to the extent nonplaintiff recruits admitted (or were accused on personal knowledge by other recruits of) exchanging answers, the interview transcripts show that the exchange was in the overwhelming number of cases initiated by the plaintiffs. None of the other recruits admitted to nearly as many instances of cheating--and of those who admitted to any cheating, almost all of them admitted to only one instance.[7]
 
 
 25
 In addition, the internal investigations included many more allegations of cheating against the plaintiffs (and included many allegations by the plaintiffs of exchanging answers with each other) than against others. Nothing else in the police investigations (or in any specific facts alleged and supported by the plaintiffs) suggests that the Department had any knowledge that suggested cheating on the part of the other recruits that was even comparable to the cheating in which the three plaintiffs engaged (with the only possible exception of another white male). The record evidence that both parties agree was before the Department thus unequivocally shows that the investigation suggested that plaintiffs were the ringleaders, and by far the worst offenders, in the instances of cheating. We believe that such information entitled the Department, as a matter of law, to differentiate between the discipline meted out to these plaintiffs and to the other recruits who the investigation disclosed to be only peripherally involved. Thus this case is not like McDonald, where a black male "likewise implicated" was not discharged for engaging in the same conduct for which two white males were discharged. McDonald, 427 U.S. at 282-83, 96 S.Ct. at 2580; see Powers, 782 F.2d at 695.
 
 
 26
 The plaintiffs' final fallback position is that even though the investigations made by the Department only establish that the Department was aware of a much lower incidence of cheating on the part of the remaining recruits, that result underreports the actual amount of cheating by the remaining recruits because the defendants engineered the second investigation to "whitewash" their decision to dismiss only the three plaintiffs after the first investigation. Plaintiffs have not, however, brought to light any evidence that creates a fact question over whether the police skewed the investigation to discriminate against white males. All the recruits were interviewed in each of the two investigations into cheating, and the second investigation was initiated as a result of the plaintiffs' suggestions that others were also involved in cheating. The record in no place suggests that the police covered up any evidence or refused to investigate any recruit. During the second investigation limited evidence of cheating on the part of recruits other than the plaintiffs appeared and the investigators explored those incidents.
 
 
 27
 Plaintiffs have suggested on appeal that the interviewers subjected them, and not others, to grueling cross-examination techniques and longer interviews. Even accepting this, however, plaintiffs have brought to light no specific facts that suggest that such heavy questioning was the result of gender or race discrimination, and plaintiffs must allege and support not only pretext, but also that the Department's actions were pretext for discrimination based on a prohibited characteristic--here race or gender. Burdine, 450 U.S. at 253, 101 S.Ct. at 1093; McDonnell Douglas, 411 U.S. at 804, 93 S.Ct. at 1825; Pollard v. Rea Magnet Wire Co., 824 F.2d 557, 558-59 (7th Cir.1987); American Nurses Association, 783 F.2d at 722. Plaintiffs' suggestion that this was the reason is conclusory, and without support cannot suffice to establish a genuine issue of fact. E.g., Powers, 782 F.2d at 694; Ashwell & Co. v. Transamerica, Inc., 407 F.2d 762, 766 (7th Cir.1969).
 
 
 28
 The plaintiffs have also made several allegations in regard to past purported acts of Inspector Frankey, and they have alleged that Inspector Frankey disliked the plaintiffs, stated that the plaintiffs were liars and cheaters, and had falsely accused the plaintiffs of cheating. The plaintiffs have not, however, provided any specific factual assertions regarding the dismissals at issue here that suggest that Inspector Frankey's alleged dislike of the plaintiffs and her belief in their mendacity and cheating was the result of discrimination based on race or gender.
 
 
 29
 In addition, the plaintiffs have not disputed that the decisions to dismiss and not to reinstate the plaintiffs were made by Chief Couper, not Inspector Frankey. There is no allegation of any specific fact suggesting that Inspector Frankey in any way influenced his decision. Plaintiffs have alleged no memo or conversation between Inspector Frankey and Chief Couper in which she urged dismissal of the plaintiffs due to their race or gender. The plaintiffs have only created factual issues that suggest that Inspector Frankey may have believed in the plaintiffs' culpability and may have disliked them. In addition, since it is undisputed that it was Chief Couper's decision to dismiss the plaintiffs it is Chief Couper's motivation for dismissing the plaintiffs that matters, and not Inspector Frankey's. See La Montagne v. American Convenience Products, Inc., 750 F.2d 1405, 1412 (7th Cir.1984).
 
 III
 
 30
 Accordingly, the district court's entry of summary judgment in favor of the defendants is A FFIRMED.
 
 
 
 [1]
 Plaintiffs' amended complaint does not distinguish between the legal bases it alleges with regard to race discrimination and those for sex discrimination. It is important to note here, as did the able district judge, that while section 1983 and Title VII reach both sex and race discrimination, claims of sex discrimination are not cognizable under section 1981, e.g., Runyon v. McCrary, 427 U.S. 160, 167, 96 S.Ct. 2586, 2592, 49 L.Ed.2d 415 (1976); St. Louis v. Alverno College, 744 F.2d 1314, 1317 (7th Cir.1984), and we have so construed plaintiffs' amended complaint. We urge counsel, however, to be more mindful of the distinctions among sections 1981 and 1983 and Title VII; drafting complaints is the business of the bar, not the bench
 
 
 [2]
 Any liability of Colonial Penn Insurance Company ("Colonial") in this action would rest upon the liability of the City of Madison. Because we hold that the City of Madison deserves summary judgment in this action, Colonial is thereby also entitled to summary judgment in its behalf. We therefore have no need to determine whether a claim was stated against Colonial, either under a pendent state law claim or federal law. We therefore do not decide that question and in no way intimate that our ground for disposition of the claim against Colonial should be read to imply that a claim was properly stated against Colonial and correctly included in this action
 
 
 [3]
 On appeal the plaintiffs have also challenged the district court's order that
 although defendants may delete the names of persons about whom allegations were made, and may delete the names of persons making allegations except those allegations that concern the plaintiffs, defendants must supply plaintiffs with a full summary of the allegations made against them and the names of the persons making those allegations. Furthermore, defendants are to codify any deletions of names so that plaintiffs can track the allegations made about a particular unidentified individual and the defendants' response to those allegations concerning that individual. Also, defendants are to identify the race and sex of each individual whose name is deleted.
 Protective Order (Nov. 7, 1985). The court in a hearing on March 10, 1986, also limited discovery into the actions of Inspector Frankey to the period (about five years at that point) during which she had been in the training division of the Department. The trial court of course has broad discretion in denying discovery, and will only be reversed for discovery limitations that actually and substantially prejudice the complaining party. E.g., Otis Clapp & Son, Inc. v. Filmore Vitamin Co., 754 F.2d 738, 744 (7th Cir.1985); Pan-Islamic Trade Corp. v. Exxon Corp., 632 F.2d 539, 550 (5th Cir.1980), cert. denied, 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981). We find no such prejudice here.
 To the extent that the plaintiffs complain about the limitation into discovery of Inspector Frankey's past actions, the plaintiffs' challenge is moot, since that information would only assist plaintiffs in establishing their prima facie case, and we have assumed that the prima facie case has been established. With respect to plaintiffs' concerns about the deletion of names we note that plaintiffs themselves admit that they have "been able to match the various recruits' statements to their assigned numbers, and thus cross-examine them on those statements...." Reply Brief at 24. Plaintiffs complain only that without full disclosure they cannot determine if the numbers used to identify each recruit "have been correctly assigned within each report document." Plaintiffs have, however, deposed the recruits and this provided them the opportunity to query the recruits regarding whether they made any particular statement. The recruit class had 18 members and the recruits were identified by race and gender. While the limitations on discovery may have been annoying to the plaintiffs, we do not believe they hindered the plaintiffs in any manner except to increase the time necessary to decipher the author of each statement. This is not enough to establish the clear showing of actual and substantial prejudice necessary to reverse an order limiting discovery. Otis Clapp & Son, Inc., 754 F.2d at 744 (7th Cir.1985); Pan-Islamic Trade Corp., 632 F.2d at 550.
 
 
 [4]
 This court has held that where a party fails to move to strike a defective affidavit or particular portions thereof, the party has waived any objections based on its defects and the court may consider the affidavit. Federal Deposit Insurance Corp. v. Meyer, 781 F.2d 1260, 1267 (7th Cir.1986); Klingman v. National Indemnity Co., 317 F.2d 850, 854 (7th Cir.1963); accord Williamson v. United States Department of Agriculture, 815 F.2d 368, 383 (5th Cir.1987). Even if any objections are waived, a court is obviously not required to consider affidavits insufficient under Rule 56(e). Here, while the defendants apparently did not formally move to strike the plaintiffs' affidavit, they did object to the consideration of much of the support claimed in the affidavit on many of the arguments we address here. There is thus no indication of the kind of sandbagging that counsels the waiver of objections to defective affidavits. Williamson, 815 F.2d at 368; In re Teltronics, 762 F.2d 185, 192 (2d Cir.1985). We note that in any case the plaintiffs have not argued to this court that we should apply the waiver doctrine
 
 
 [5]
 It is clear that "the McDonnell Douglas test is flexible and may be adapted to the fact situation as appropriate." Yarbrough v. Tower Oldsmobile, Inc., 789 F.2d 508, 511 n. 4 (7th Cir.1986) (quoting La Montagne v. American Convenience Products, Inc., 750 F.2d 1405, 1409 n. 2 (7th Cir.1984)). McDonnell Douglas itself expressly authorized such flexibility where appropriate in a footnote appended to its discussion of the elements of a prima facie case: "The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations." 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13; accord Furnco Construction Corp. v. Waters, 438 U.S. 567, 575-76, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). The courts have approved modifications to the McDonnell paradigm to take account of reverse discrimination, see Bishopp v. District of Columbia, 788 F.2d 781, 786 (D.C.Cir.1986); Parker v. Baltimore & Ohio Railroad Co., 652 F.2d 1012, 1017 (D.C.Cir.1981); cf. Ustrak v. Fairman, 781 F.2d 573, 577 (7th Cir.1986), and of alleged discriminatory application of work rules, Chescheir v. Liberty Mutual Insurance Co., 713 F.2d 1142, 1148 (5th Cir.1983)
 
 
 [6]
 We note that this court has in dicta characterized claims of disparate treatment for comparable performance as indirect cases that fall under the McDonnell Douglas/Burdine paradigm. Pollard v. Rea Magnet Wire Co., 824 F.2d 557, 558 (7th Cir.1987)
 
 
 [7]
 It is these admissions that to a large extent separate this action from other summary judgment actions involving motive. Admissions have by their very nature considerable probative value, e.g., Morrison v. Walker, 404 F.2d 1046 (9th Cir.1968); H.B. Zachry Co. v. O'Brien, 378 F.2d 423 (10th Cir.1967); Holcomb v. Aetna Life Insurance Co., 255 F.2d 577 (10th Cir.), cert. denied, 358 U.S. 879, 79 S.Ct. 118, 3 L.Ed.2d 110 (1958), and thus, when combined with other telling evidence may in particular cases, such as this one, allow the grant of summary judgment even where motive is at issue by establishing that even after all inferences are drawn in favor of the nonmovant he has established no factual issue