UNITED STATES of America, Plaintiff,

v.

NORTHWEST COMMERCE BANK, on Behalf of THERAPEUTIC CONSULTANTS, INC., Defendant.

No. 89 C 1882.

United States District Court, N.D. Illinois, E.D.

Oct. 4, 1989.

---

1. Suburban's Memorandum in Opposition to    Motion to Dismiss, at p. 3.

Linda A. Wawzenski, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

Nathan H. Lichtenstein and Robert N. Sodikoff, Greenberg Keele Lunn & Aronberg, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

The United States of America ("United States") has brought this action against Northwest Commerce Bank ("NCB") seeking to recover alleged overpayments made under the Medicare Act, 42 U.S.C. § 1395 *et seq.* Both parties have moved for summary judgment.[1] For the reasons given below, we grant Northwest Commerce Bank's motion for summary judgment and deny the United States' motion for summary judgment.

Also before the Court is NCB's statement of attorney's fees and the United States' objections to this statement. These items are submitted pursuant to our order of August 15, 1989, in which we denied NCB's motion to strike the United States' supporting memorandum and "Statement of Undisputed Facts" but sanctioned the United States for misrepresentations made in these documents. For reasons given below, we grant NCB $932.50 in attorney's fees.

### Background

The current dispute stems from NCB's relationship with Therapeutic Consultants, Inc. ("TCI"). TCI participated in the Medicare program as a provider of physical therapy services. TCI had borrowed over $285,000 from NCB, pursuant to a "Term Loan and Security Agreement." As collateral for the loan, TCI gave the NCB a security interest in all of TCI's existing and future accounts receivable. By October 1, 1984, TCI had defaulted on the loan. NCB declared the entire balance to be due and payable. In order to enforce its security interest in TCI's accounts receivable, NCB sent a letter instructing TCI's account debtors to make payment directly to NCB. For some period of time after October 1, TCI continued to provide physical therapy services to its patients. NCB maintains that Jerry Juhl, the President of TCI, continued the day-to-day operations of TCI. However, the United States contends that Juhl acted only on behalf of NCB.

The United States claims that NCB assumed ownership of TCI after exercising its default rights under the loan agreement; that NCB assumed the ownership of TCI's assets, and that NCB undertook the active operation of TCI. The United States argues that because NCB became the own-

---

1. NCB originally labeled its motion as a motion to dismiss. However, because NCB relies on materials outside the pleadings, we will treat the motion as a motion for summary judgment. Fed.R.Civ.P. 12(c).

er of TCI, it is liable for alleged overpayments made to TCI under the Medicare Act.

The Medicare Act establishes a system of advance estimated payment for participants in the Medicare program, or "providers." Providers are given interim estimated payments over the course of a cost period. At the end of a cost period, the provider files a cost report, which documents the precise amount of Medicare funds to which the provider is entitled. Based on this report, Medicare issues or demands funds to make up a deficit or excess payment. *See* 42 U.S.C. § 1395g.

TCI received $380,012 in advance payments. However, Medicare declared that the cost report filed on behalf of TCI was not auditable. Accordingly, Medicare declared that the entire amount paid to TCI was an overpayment. The United States seeks to hold NCB liable for this amount on the theory that, during NCB's attempt to exercise its security interest in TCI's accounts receivable, NCB assumed the ownership, operation and control of TCI.

### Summary Judgment

NCB seeks summary judgment on two grounds. First, NCB claims that there are no facts on the record to support the United States' claim. In support of this factual contention, NCB submits the affidavit of Adam Hudelson, who is the Vice President of NCB. Hudelson states that, "at no time did the Bank offer provider services to any third party or continue day to day operations of TCI." Second, NCB claims that, as a matter of law, a secured creditor that merely takes action to enforce a valid security interest does not assume the responsibilities and liabilities of a medicare provider. In response, the United States claims that NCB's acquired TCI's assets and continued its operations. According to the United States, these alleged actions "constituted change of ownership [sufficient] to render the new owner a participant in the Medicare program."

The only factual matter produced by the United States are certain attachments to its reply to defendant's motion. However, these attachments are neither sworn to nor certified. In the absence of certification or a supporting affidavit, these attachments do not satisfy the requirements of Fed.R.Civ.P. 56(e). "[T]he requirements of Rule 56(e) are set out in mandatory terms and the failure to comply with those requirements makes the proposed evidence inadmissible during the consideration of the summary judgment motion. Supporting materials designed to establish issues of fact in a summary judgment proceeding must be established through one of the vehicles designed to ensure reliability and veracity.... When a party seeks to offer evidence through other exhibits, they must be identified by affidavit or otherwise made admissible in evidence." *Friedel v. City of Madison*, 832 F.2d 965, 970 (7th Cir.1987). Because of the United States' failure to adhere to the requirements of Rule 56(e), we are precluded from considering the attachments.[2] *See id.; Mays v. Chicago Sun–Times*, 865 F.2d 134, 137 (7th Cir.1989); *Macklin v. Butler*, 553 F.2d 525, 528 (7th Cir.1977).

Other than these attachments, the United States fails to present facts to support its claim. The United States claims that NCB assumed ownership of TCI's assets, but does not list the specific assets which NCB allegedly acquired. Indeed, we are unable to determine from the record whether the $380,012 in interim Medicare payments was actually forwarded to NCB. The United States also fails to produce any facts establishing that NCB continued the operations of TCI on its own behalf. While the United States does claim that Juhl, the President of TCI, acted as an agent of NCB, it fails to produce any facts to buttress this contention.

Given the failure of the United States to support its case with specific facts, we must grant summary judgment in favor of NCB. A party that bears the burden of proving an issue at trial also bears the

---

**2.** The parties should not interpret this finding to indicate that our resolution of the motion would

be different if the attachments were properly submitted.

burden of presenting sufficient facts on summary judgment from which a trier of fact could find in its favor. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *Beard v. Whitley County REMC,* 840 F.2d 405, 410 (7th Cir.1988). Rather than producing specific facts, the United States has chosen to advance its cause with blanket assertions that NCB acquired and operated TCI. However, a party cannot withstand a motion for summary judgment by offering conclusory allegations. *Cain v. Lane,* 857 F.2d 1139, 1142 (7th Cir.1989).

 As an additional ground for our ruling, we reject the United States' claim that a secured creditor assumes the liabilities and obligations of a provider merely by attempting to enforce a security interest. The United States cites no authority to support this contention. On the contrary, courts have acknowledged that security interests in the accounts receivable of Medicare providers are not *per se* violations of the Medicare Act. *See Matter of Missionary Baptist Foundation,* 796 F.2d 752, 759 (5th Cir.1986); *In re American Care Corp.,* 69 B.R. 66, 67 (Bkrtcy.N.D.Ill.1986). The United States has not demonstrated, factually or through legal argument, that the agreement between NCB and TCI operated to frustrate the policies of the Medicare Act. Indeed, a prohibition on security interests in accounts receivable might cripple a provider's ability to obtain financing.[3]

## Attorney's Fees

Pursuant to our August 15, 1989 order, NCB submitted a statement requesting $1,823.75 for attorney's fees incurred in preparing its motion to strike the United States' statement of undisputed facts. The United States does not object to the award of attorney's fees but contends that the amount requested is excessive because the hour amounts are inflated and some of the fees would have been incurred in the absence of the motion to strike. We agree that the amount of attorney's fees request-

ed is excessive and find that an award of $923.50 is appropriate. This award reflects 5.5 hours at $155 per hour for the work of Nathan Lichtenstein in preparing the motion to strike and the reply brief, and ½ hour at $160 per hour for the work of Robert Sodikoff in reviewing and revising the motion to strike.

## Conclusion

For reasons given above, we grant Northwest Commerce Bank's motion for summary judgment and deny the United States' motion for summary judgment. In addition, we grant Northwest Commerce Bank $932.50 in attorney's fees pursuant to our order of August 15, 1989. It is so ordered.

---

**3.** The United States points out that accounts receivable are the primary assets of providers. If this is true, prohibiting providers from offering receivables as collateral would certainly make it difficult, if not impossible, for providers to obtain financing.