Kenneth KIPNIS, Plaintiff,

v.

David J. BARAM, Administrator, General Services Administration, Defendant.

No. 96 C 2910.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 3, 1996.

Ronald Barry Schwartz, Hedberg, Tobin, Flaherty & Whalen, P.C., Chicago, IL, for plaintiff.

Carole Judith Ryczek, U.S. Attorney's Office, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Presently pending before the Court is defendant David Baram's motion to dismiss plaintiff Kenneth Kipnis' amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] The Court has previously advised the parties that it would convert the motion to dismiss into a motion for summary judgment, as provided for in Rule 12(c). After due consideration of the parties' submissions, we grant summary judgment in favor of the defendant.

## RELEVANT FACTS

Kipnis works in the Chicago regional office of the General Services Administration agency (GSA). Amended Complaint ("Am. Compl.") ¶ 4. In 1993, Virginia Grant, one of his subordinates, filed a sexual harassment charge against him with the GSA's Regional EEO Officer, Marjorie Walton. Kipnis alleges that Walton prepared a gender-biased and false Report of Inquiry that contained only Grant's unsubstantiated allegations and did not contain any documents or facts discrediting the allegations. Id. ¶¶ 5–8. Kipnis charges that Walton had a "conflict of interest" because she was "a witness to certain events" and knew of other complaints previously made against Kipnis by other subordinates. Id. ¶ 6. Walton circulated the report among GSA management. Id. ¶ 9.

■ In Kipnis' response to the motion to dismiss,[2] he expands upon some of the statements made in his amended complaint. Kipnis and Grant had been involved in an intimate consensual relationship. Pl.'s Resp., Ex. 2 (EEO Report of Inquiry). After the affair ended, they were involved in an altercation in which Kipnis allegedly assaulted Grant, prompting Grant to file a complaint with Walton. Id. Kipnis alleges that, according to the GSA's written procedures, Walton should have assigned Grant's complaint to a collateral duty officer rather than conducting the investigation herself. Pl.'s Resp. at 4. Kipnis also claims that Walton knew that at least one of the other sexual harassment claims filed earlier against Kipnis could not be sustained. Id. at 3–4. Kipnis sent out memoranda complaining about the biased, false report to Walton and others at the GSA. Am. Compl. ¶ 16.

1. Kipnis also moved for leave to present oral argument. That motion is hereby denied.

2. While a plaintiff may not cure deficiencies in his complaint by inserting missing allegations in documents that are not a formal amended complaint, he may "submit documents which show that the complaint as worded encompasses a claim that would entitle him to relief." *Harrell v. United States*, 13 F.3d 232, 236 (7th Cir.1993).

Kipnis subsequently filed formal complaints of gender discrimination with both the GSA and the EEOC, grieving Walton's investigation. *Id.* The GSA issued Final Agency Decisions finding that his allegations did not indicate discrimination. *Id.* ¶ 13 & Exs. A, B.

Earlier in 1993, prior to Grant's allegations of sexual harassment against Kipnis, Kipnis submitted a suggestion to the GSA's award program. This program is designed to reward employees for their cost-saving suggestions. Pl.'s Resp., Ex. 5. The GSA has guidelines for determining the amount of employee awards, based on the amount of money that the agency will save in the first year after the suggestion is implemented. *Id.* at 9. Supplemental awards must be paid if suggestions are adopted outside of the region. *Id.* at 13. Kipnis suggested that the GSA make it a priority to renegotiate its existing leases to take advantage of lower rents available in some markets.

On December 3, 1993, two days after he filed his formal complaint of sexual harassment based on the handling of Grant's allegations, Kipnis received a $500 award for the suggestion that he had submitted earlier. Am. Compl. ¶ 17. He was asked to address certain concerns about his suggestion, and he did so. *Id.* Despite his additional work, however, the amount of his award was not increased. *Id.* ¶ 19. Kipnis also believes that his suggestion was adopted outside the region, but he has not received any supplementary award. Pl.'s Resp. at 5–6. Kipnis requested that his award be reevaluated, but his request was denied. *Id.* at 6.

In Count I of the Amended Complaint, Kipnis alleges that he has suffered sex discrimination, and that as a result of the biased report prepared by Walton, he will not be promoted or receive favorable assignments. Am. Compl. ¶ 10. Count II asserts that the GSA retaliated against Kipnis for filing a sexual harassment complaint by refusing to give him a higher award. *Id.* ¶ 18.

## STANDARDS

 Because various documents outside of the pleadings have been filed, this Court determined that Baram's motion to dismiss should be converted into a motion for summary judgment. A court can grant summary judgment even though neither party has moved for it, as long as it gives notice to the party against whom the court proposes to enter summary judgment. *Eliasen v. Itel Corp.,* 82 F.3d 731, 738 (7th Cir.), *cert. denied,* — U.S. ——, 117 S.Ct. 388, 136 L.Ed.2d 304 (1996). As the United States sought a case-dispositive outcome in its motion, Kipnis was properly notified of the proper manner in which to contest the government's evidentiary materials and the consequences of failing to do so. *See English v. Cowell,* 10 F.3d 434, 437 (7th Cir.1993). Kipnis has been afforded the opportunity to present the extrinsic evidence which he believes creates a triable issue and has submitted such materials to the Court for its consideration in ruling on the instant motion. Given that Kipnis has availed himself of the opportunity to submit materials outside the pleadings, to the extent the Court finds it has jurisdiction, it may treat the motion as one for summary judgment. *See* FED. R. CIV. P. 12(c).

Summary judgment is proper only if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In determining whether a genuine issue exists, the Court "must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). The non-movant must "make a showing sufficient to establish the existence of [the] element[s] essential to that party's case, and on which that party will bear the burden of proof at trial" in order to withstand a motion for summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

In considering a motion for summary judgment, the Court considers all evidence in the light most favorable to the non-moving party and draws all inferences in that party's favor. *Schmidt v. Methodist Hosp. of Indiana, Inc.,* 89 F.3d 342, 344 (7th Cir.1996). However, if "the record taken as a whole could not lead a rational trier of fact to find for the non-

moving party there is no 'genuine' issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1363, 89 L.Ed.2d 538 (1986).

In making its determination, the Court's sole function is to determine whether sufficient evidence exists to support a verdict in the non-movant's favor. Credibility determinations and the weighing of evidence are jury functions, not those of a judge deciding a motion for summary judgment. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14. In an employment discrimination suit, where credibility and intent are pivotal issues, these standards apply with added rigor. *Courtney v. Biosound, Inc.,* 42 F.3d 414, 418 (7th Cir. 1994).

## ANALYSIS

### I. COUNT I: SEXUAL HARASS-MENT/DEFAMATION

The first question posed in this case is whether Kipnis has stated a cause of action under Title VII. Recently, in *McDonnell v. Cisneros,* the Seventh Circuit addressed the issue of "whether an investigation of sexual harassment that exceeds the proper limits is itself a form of actionable sexual harassment." 84 F.3d 256, 260 (7th Cir.1996). In *McDonnell,* a male and a female employee were accused of sexual misconduct. An investigation ensued in which both employees were exonerated. However, because of the unprofessional and hostile manner in which the investigation was conducted, both employees complained to their supervisors and filed complaints that the treatment they received during the investigation constituted a form of sexual harassment.

Noting that Title VII prohibits discrimination in working conditions on grounds of sex, the Seventh Circuit held that it was conceivable that the concept of a gender-based hostile working environment could stretch to apply to a male supervisor whose life is made unbearable by accusations that he is extorting sexual favors from subordinates, since the accusations could be based in part on the fact that he is a man. *Id.* at 259–60. The plaintiffs in *McDonnell* asserted that this type of discrimination claim should include instances in which an investigation of a sexual harassment claim causes its subject undue humiliation. The Seventh Circuit rejected this argument, finding that "[t]he objections to such an extension of the concept of sexual harassment are both practical and doctrinal." *Id.* at 261.

"The practical objection is that it places the employer on a razor's edge." *Id.* Employers who disregard or fail to investigate charges of sex-related misconduct by their employees run the risk of being sanctioned under Title VII for tolerating sexual harassment. *Id.* at 260. On the other hand, those who take charges too seriously would also be guilty of sexual harassment if the expanded theory of liability advanced by the plaintiffs in *McDonnell* were accepted. Under this scenario, employers would face liability for either doing too much or too little. The *McDonnell* court specifically refused to extend Title VII liability to bring about this dilemma. *Id.* at 261.

The doctrinal objection to extending sexual harassment to cover such situations found by the *McDonnell* court is equally important for our purposes here. In *McDonnell,* the Seventh Circuit reasoned that if the investigators had told others about the false accusations against the plaintiffs, then the investigators committed the tort of defamation. *Id.* However, since the investigators were federal officers, they had the defense of qualified immunity, and the right to substitute the United States as party defendant under the applicable federal statute, the Federal Tort Claims Act. *Id.* Because the FTCA provides that the United States is not liable for defamation by its employees, the plaintiffs had no redress available under that statute. In an attempt to avoid this result, the plaintiffs claimed that the overzealous investigation constituted sex discrimination that violated Title VII. The Seventh Circuit rejected this attempt to plead a different statute, holding that "[w]hen Congress crafts particular remedies [such as the FTCA] for particular wrongs, the presumption is that these are the exclusive remedies and that such limitations as they may embody are not to be circumvented by extending a more generally worded statute [such as Title VII]

over the subject of the more specific one." *Id.* (citations omitted).

Kipnis' claim must fail for the same practical and doctrinal objections articulated in *McDonnell.* Just like the plaintiffs in *McDonnell,* Kipnis has alleged that false information about him was disseminated during the investigation into his alleged sexual misconduct. As in *McDonnell,* the essence of this claim is that the investigator (here, Walton) defamed him. The FTCA delineates the procedures by which tort claims may be brought against the United States government or its employees.[3] 28 U.S.C. §§ 2671–80. However, § 2680(h) specifically lists certain types of claims from which the United States and federal employees are immune, including libel and slander. Walton would be immune from liability under the FTCA, even if we took it as true that she defamed Kipnis through the investigation and Report of Inquiry. Under *McDonnell,* she is therefore immune from liability under Title VII as well.

Kipnis argues that Walton, an EEO officer, is not an "investigative or law enforcement officer" under the FTCA, as was apparently the case for the investigators in *McDonnell.* This distinction is without substance. The FTCA specifically excludes defamation by any federal employee from the list of torts for which sovereign immunity is waived. 28 U.S.C. § 2680(h). An EEO officer in her official capacity is a federal employee and thus § 2680(h) applies to her. Whether she is also an "investigative or law enforcement officer" for the purposes of § 2680(h) is a question that we need not answer here, as it is simply irrelevant in this case. The doctrinal objection identified by the Seventh Circuit in *McDonnell* forecloses Kipnis' claim.

The practical objection identified in *McDonnell* is also present. There is no question that the GSA was required to conduct some investigation into the alleged sexual harassment by Kipnis. Allowing Kipnis to sue his employer for sexual discrimination in these circumstances would indeed set the GSA on the "razor's edge," and extend the law beyond the bounds set by the Seventh

Circuit in *McDonnell,* a result that this Court cannot countenance.

■ Kipnis also argues that Walton did not follow the proper procedures for EEO complaints. She allegedly encouraged Grant to file an EEO complaint, and she handled the complaint herself rather than referring it to someone else, as she allegedly should have since she had a "conflict of interest." These allegations do not support a Title VII claim. The Seventh Circuit held in *Friedel v. City of Madison,* 832 F.2d 965, 974 (7th Cir.1987) that the misapplication of normal procedures is not sufficient to support a Title VII claim. In *Friedel,* police training cadets were discharged after they had been caught exchanging answers on their examinations, and they claimed discrimination on the basis of race and sex under Title VII. The cadets claimed that exchanging answers was permissible at the academy. The court held that even if cheating were permissible and the academy had erred in discharging the cadets, the fact that the academy had misapplied its own policy was not sufficient to find Title VII discrimination, unless there was evidence the misapplication was intended as a means of discriminating. *Id.* Similarly, even if Walton disregarded the GSA's normal procedure for investigating sexual harassment claims, Kipnis has not shown that the differences in procedures were used to harass him because of his sex in violation of Title VII.

■ Simply put, Kipnis has not convinced this Court that he should be allowed to proceed with his sexual harassment claim in light of the Seventh Circuit's clear directions in *McDonnell,* which this Court is obliged to follow and with which it fully agrees. While the Seventh Circuit indicated in *McDonnell* that false accusations may be a form of sexual harassment in some circumstances, we find no evidence that such was the case here. Nowhere has Kipnis articulated how the alleged discrimination was on account of his sex. There is no evidence that a female employee would have been treated any differently under the same circumstances. Therefore, this Court must enter summary

---

3. "Employee of the government" includes employees of any federal agency. 28 U.S.C. § 2671.

judgment on Count I of Kipnis' amended complaint.

## II. COUNT II: RETALIATION

■ The second question posed in this case is whether Kipnis has stated a cause of action for retaliation under Title VII based on the GSA's refusal to increase his monetary award. Title VII prohibits an employer from retaliating against an employee "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e–3. There are three elements of a prima facie case of retaliation: (1) the plaintiff engaged in a protected activity under Title VII; (2) he suffered an adverse action by his employer; and (3) there is a causal link between the protected expression and the adverse action. *McKenzie v. Illinois Dep't of Transp.*, 92 F.3d 473, 483 (7th Cir. 1996).

There is no question here regarding the first element of the prima facie case. Kipnis filed a complaint with the EEOC, clearly a protected activity under Title VII. The question is whether the second element, adverse action, exists here. Whether the standards of retaliation have been met will turn on whether the fact that Kipnis did not receive a higher award is sufficient to constitute adverse action.

■ In order to state a claim for retaliation, the adverse action imposed on the employee must be material. "[A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir.1993). Such a materially adverse change could include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id.* "[A]dverse actions can come in many shapes and sizes.... The law deliberately does not take a 'laundry list' approach to retaliation, because ... its forms are as varied as the human imagination will permit."

*Knox v. Indiana*, 93 F.3d 1327, 1334 (7th Cir.1996).

In spite of the liberal way in which courts construe adverse action, the Seventh Circuit has generally found adverse action in more extreme cases, such as when an employee was terminated, but has been more reluctant when the action is not so severe. *See, e.g., Alexander v. Gerhardt Enterprises, Inc.* 40 F.3d 187, 196 (7th Cir.1994) (employee was fired; retaliation found); *Holland v. Jefferson Nat'l Life Ins.*, 883 F.2d 1307, 1316 (7th Cir.1989) (employee was not returned to her position after maternity leave; retaliation found); *cf. Smart v. Ball State Univ.*, 89 F.3d 437, 442 (7th Cir.1996) (poor job evaluations alone were not adverse actions that showed retaliation); *Crady*, 993 F.2d at 136 (change in title and responsibilities from assistant vice president to loan officer was not a materially adverse action); *Spring v. Sheboygan Area Sch. Dist.*, 865 F.2d 883, 886 (7th Cir.1989) (principal's transfer to a dual assignment at two other schools was not a materially adverse action). As the Seventh Circuit recently stated, "not everything that makes an employee unhappy is an actionable adverse action." *Smart*, 89 F.3d at 441.

Kipnis has not cited any cases with similar facts in which a court found retaliation. The closest fact pattern was in *Rabinovitz v. Pena*, 89 F.3d 482 (7th Cir.1996), in which an employee received a performance rating that was lower than usual, preventing him from receiving a $600 bonus. The Seventh Circuit affirmed the district court's holding that the "loss of a bonus is not an adverse employment action in a case ... where the employee is not automatically entitled to the bonus." *Id.* at 488–89.

■ Thus, the GSA's refusal to increase its award to Kipnis may only be considered an adverse action if Kipnis was automatically entitled to a higher award. The GSA has specific guidelines for determining awards for those suggestions which are adopted. Pl.'s Memo in Opp., Ex. 5. Kipnis' suggestion was only adopted "in part" due to certain flaws. Pl.'s Submission of Add'l Evidence, Ex. Cl (Suggestion Evaluation). Kipnis claims to have addressed these flaws, but has

submitted no evidence that his improvements satisfactorily corrected the problems. The GSA award program regulations state that even for those suggestions that are fully adopted, "not all adopted suggestions are eligible for an award." Pl.'s Memo in Opp., Ex. 5 ¶ 3(a). For instance, awards should not be made when suggestions fall within normal duties, or they duplicate ideas already being considered. *Id.* ¶ 3(b). Kipnis' suggestion was not novel. Although rarely done, renegotiating leases was among the duties of contracting officers. Pl.'s Submission of Add'l Evidence, Ex. C1 (Suggestion Evaluation).

Kipnis has not demonstrated that the GSA was required to award him any specific amount more than the $500 he received. His estimates of possible savings realized by the GSA are just that—general estimates that cannot be traced to Kipnis' specific suggestion. Nor has Kipnis identified any GSA formula for pro-rating the savings of a suggestion adopted "in part." In light of this dearth of evidence, the Court finds that Kipnis was not "automatically" entitled to a higher award for his suggestion. As Kipnis was not automatically entitled to a higher bonus, under *Rabinovitz* there was no adverse action.

■ Indeed, even if we found that the $500 award constituted an adverse action, we could not find the causal link necessary to satisfy the third element of retaliation. "[A] plaintiff may establish such a link through evidence that the [adverse action] took place on the heels of the protected activity." *Dey v. Colt Constr. & Dev. Co.,* 28 F.3d 1446, 1458 (7th Cir.1994). Here, however, no causal link is shown by the temporal sequence of events. Kipnis submitted his suggestion to the award program in April 1993. He first received the $500 award for the suggestion on December 3, 1993, two days after he filed a formal complaint regarding the Report of Inquiry that had been issued in the interim. His request for a re-evaluation of the amount of the award was not finally denied until February 1996, more than two years after Kipnis had filed his complaint. In these circumstances, the Court cannot find that the sequence of events demonstrates any causal link.

■ Further, even if we concluded that a prima facie showing had been made, Kipnis has not rebutted the GSA's proffered non-discriminatory justification for not increasing the amount of the award. In this case, calculating the award was not an exact science. The GSA has stated that it gave Kipnis the $500 award as a recognition of his interest in his workplace, not based upon any particular amount of savings it expected to realize from the suggestion. Def.'s Supplemental Mem., Ex. B ¶ 9. As there is nothing in the record to indicate that Kipnis' suggestion was itself responsible for any quantifiable savings, Kipnis cannot quarrel with the GSA's approach. Moreover, the GSA avers, and Kipnis has not refuted, that his $500 award was "comparable to awards given to employees who had submitted similar suggestions and had not filed EEO complaints." *Id.* ¶ 11. Kipnis would have to " 'produce[ ] evidence from which a rational factfinder could infer that the [GSA] lied' about its proffered reasons" for not giving him a higher award. *Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120, 1124 (7th Cir.1994) (quoting *Shager v. Upjohn Co.,* 913 F.2d 398, 401 (7th Cir.1990)). Kipnis has not done so. As Kipnis cannot show that he should have received any award greater than $500, his claim of retaliation cannot stand. Therefore, the Court also grants summary judgment in favor of the defendant on Count II.

## CONCLUSION

For all of the foregoing reasons, the defendant's motion for summary judgment is granted in its entirety. The complaint is dismissed with prejudice, the parties to bear their own costs. The plaintiff's motion for oral argument is denied.