Mark Allen **HUDSON**

v.

**JOSEPH B. FAY CO.**

Civ. No. L–94–630.

United States District Court,
D. Maryland.

Oct. 12, 1995.

Mark Allen Hudson, plaintiff, Pro Se.

Anthony W. Hinkle, Chester A. Dudzinski, and Cipriani & Werner, of Pittsburgh, Pennsylvania, for defendant.

## MEMORANDUM

LEGG, District Judge.

Plaintiff brought this suit pursuant to 42 U.S.C. § 2000e–2 *et seq.* ("Title VII") alleging that defendant, his former employer, discriminated against him on the basis of race and that this discrimination took the form of differential treatment and ultimately, his termination. Following discovery, defendant moved for summary judgment. Although the Court sent plaintiff a reminder that his response was overdue, Hudson did not op-

pose the motion.[1] While plaintiff's default is an independent ground for dismissing Hudson's suit, the Court, nevertheless, will consider the merits of defendant's motion. *Campbell v. Hewitt, Coleman & Assoc., Inc.,* 21 F.3d 52, 55 (4th Cir.1994). In so doing the Court has determined that there is no need for a hearing. *See* Local Rule 105.6 (D.Md.1994). For the reasons stated below, the Court shall GRANT the defendant's motion for summary judgment by separate Order.

## I. *FACTS*

In 1993, defendant, Joseph N. Fay, Co. ("Fay"), participated in the construction of the Pennsylvania Station parking structure. Fay, a Pennsylvania corporation, assigned six of its permanent employees to the demolition of the existing parking structure (the "Project"). In addition, Fay contacted the Laborers International Union of North America, AFL/CIO Local Union No. 194 (the "Union") for additional temporary laborers. (Fay Aff. at 2). On July 19, 1993, plaintiff Mark A. Hudson ("Hudson") began work on the Project as a temporary skilled laborer. At the time Hudson was hired, the Project work force consisted of fifteen workers. Six of the workers were permanent Fay employees and nine of the workers were temporary employees. (Fay Aff., ex. A—Employee Work History). All of Fay's permanent employees were white while eight of the nine temporary employees were African–American. *Id.*

On the first Friday of plaintiff's employment, he observed that paychecks were distributed only to the African–American employees and to one white equipment operator. (Hudson Dep. at 56). Hudson discussed the discrepancy with another laborer, Tony Bennett. Bennett, who had begun work on the project two weeks before Hudson, allegedly told Hudson that he had been paid on Wednesday until he missed work after getting paid, and as a result, his paycheck was now held until Friday. *Id.* at 62–63. Hudson alleges that the reason African–American laborers' paychecks were held until Friday was because the management feared that, once paid, African–Americans would not show up for work until the following Monday. Hudson contends that it was discriminatory for Fay to pay its permanent employees (all of whom were white) on Wednesdays while paying its temporary employees (of whom eight of nine were African–American) on Fridays.

Hudson did not file a formal grievance but requested Monet Faulkner, a Union laborer, to ask Ricky Shawley, the Project superintendent, about the pay schedule. *Id.* at 67–68. Plaintiff also requested James Henderson, the Project supervisor, to discuss the pay schedule with Shawley. *Id.* at 68–70.

On July 30, the second Friday of Hudson's employment, Shawley gave the plaintiff two paychecks, one for his first week of work and one for his second week. Hudson was then told that he was being laid-off. *Id.* at 77. Earlier in the week, Fay had laid-off one other laborer, James Bennett, and the following week, three more laborers were laid-off the Project. No new laborers were hired during this period. (Fay Aff., ex. A—Employee Work History).

On August 23, 1993, Hudson filed charges with the Equal Employment Opportunity Commission ("EEOC") and was issued a Notice of Right to Sue on December 17, 1993. Subsequently, plaintiff, proceeding *pro se,* filed the instant action, alleging: (i) that Fay practiced racial discrimination in its treatment of employees and (ii) retaliatory discharge, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2 *et seq.*

Defendant responds that Hudson and the other Baltimore employees were paid on Fridays because they were temporary. Fay's payroll procedure for the workers at the Baltimore site was as follows: At the end of each pay period, the workers' time slips were mailed from Baltimore to Fay's accounting department in Pittsburgh, Pennsylvania. (Fay Aff. at 1). Upon receiving the time

---

**1.** On September 12, 1995, the Court sent a letter to the plaintiff in which it was explained that a failure to respond to the motion for summary judgment could result in the granting of said motion. The Court also granted plaintiff an additional fourteen days in which to file a response to the motion or to proffer to the Court a reason why plaintiff was unable to respond. Despite the Court's admonition, Hudson has not responded to or opposed the motion for summary judgment.

slips on Sunday or Monday, the accounting department ran the payroll. The paychecks for the permanent employees were signed on Tuesday or Wednesday and mailed to their homes, arriving on Wednesday, Thursday, or Friday, depending upon the mail. Paychecks for the temporary workers were sent by hand to the Project superintendent, who distributed them on Friday. *Id.*

Fay denies that racial animus motivated the organization of its payroll procedure. By failing to respond, plaintiff has come forward with no evidence to the contrary.

## II. *STANDARD OF REVIEW*

■ The Court shall grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "The summary judgment inquiry thus scrutinizes the [non-moving party's] case to determine whether the [non-moving party] has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data General Corp.,* 12 F.3d 1310, 1316 (4th Cir.1993); *accord Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888–89, 110 S.Ct. 3177, 3188–89, 111 L.Ed.2d 695 (1990). In determining whether there exists a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. *Overstreet v. Kentucky Cent. Life Ins. Co.,* 950 F.2d 931, 937–38 (4th Cir.1991).

## III. *DISCUSSION*

### A. *Disparate Treatment*

Section 703 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2, provides:

(a) Employer Practices

It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

■ to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

■ The Supreme Court has established the analytical framework under which a plaintiff must pursue a Title VII claim. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Once a plaintiff has established a *prima facie* case, the burden shifts to the employer to state a legitimate, nondiscriminatory reason for its actions. *Id.* If the defendant articulates such a reason, the burden shifts back to the plaintiff to establish that the employer's proffered reasons for its actions are pretextual. *Id.; See also, St. Mary's Honor Ctr. v. Hicks,* —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■ In order to establish a *prima facie* case, plaintiff must show: 1) that he is a member of a protected class; 2) that he performed his job satisfactorily; 3) that he suffered from an adverse employment action; and 4) that similarly situated employees who were not minorities members received more favorable treatment. *Atkins v. Board of School Comm'rs of City of Indianapolis,* 830 F.Supp. 1169, 1174 (S.D.Ind.1993); *Glover v. Lockheed Corp.,* 772 F.Supp. 898, 901 (D.S.C. 1991); *See also McDonnell Douglas,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668.

■ Under *McDonnell Douglas,* the Court will assume that plaintiff has met his *prima facie* case. Plaintiff is an African–American and defendant has not contested that plaintiff's work was satisfactory throughout his employment. Hudson alleges that Fay paid its African–American employees on Fridays because Fay believed that if its minority employees were paid earlier in the week, they would not return until Monday. If

proven, such a practice would be illegal. Thus, plaintiff has established a *prima facie* claim. *Atkins,* 830 F.Supp. at 1174.

Having stated a *prima facie* case, the burden shifts to the employer to state a legitimate, nondiscriminatory reason for its actions. If the defendant articulates such a reason, the burden shifts back to the plaintiff to establish that the employer's proffered reasons for its actions are pretextual. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824.

Defendant has averred that the reason African–American laborers at the Baltimore site were paid on Fridays was because of the temporary nature of their employment. Defendant argues that the practice of issuing the temporary employees' paychecks in Pittsburgh and sending them to Baltimore by hand made it impractical to disperse the paychecks on Wednesday. While Fay did mail the paychecks of its permanent employees directly to their homes, Fay could not mail the temporary workers their paychecks because Fay did not have their addresses in its accounting system. As Fay points out, all the temporary Baltimore employees, including the white laborer, were treated the same. Therefore, defendant contends that it had a legitimate non-discriminatory reason for its payroll procedures.

Defendant's explanation of its pay procedures is sufficient to meet the defendant's burden of stating a legitimate, nondiscriminatory reason for its actions. Having articulated its reasons, the burden shifts to the plaintiff to establish that his employer's explanation is pretextual. Despite proper service of defendant's motion for summary judgment and a letter from this Court stating that a failure to respond to said motion could result in judgment against plaintiff, Hudson has failed to respond. Plaintiff has offered no evidence to refute defendant's proffered explanations for its actions. Thus, the Court finds that there is no basis upon which a jury could find that plaintiff has met his required burden of proof.

**B.** *Retaliatory Discharge*

In order to prevail on his retaliatory discharge claim, plaintiff must follow the same burden-shifting sequence as in his disparate treatment claim. *Williams v. Cerberonics, Inc.,* 871 F.2d 452, 457 (4th Cir.1989). The elements necessary to establish a *prima facie* retaliatory discharge claim are: 1) that plaintiff engaged in protected activity; 2) that defendant took adverse employment action against him; and 3) that a causal connection existed between the protected activity and the adverse action. *Id.*

Plaintiff has established a *prima facia* case. As an African–American, Hudson falls within a protected class and he was laid-off after complaining (albeit in a nondirect manner) about Fay's pay practices. The burden, therefore, shifts to the defendant to show a legitimate, non-discriminatory reason for the discharge. *Williams,* 871 F.2d at 457. Defendant contends that Hudson was laid-off along with other temporary employees due to a significant slow down in the demolition project.[2] Two individuals, including Hudson, were laid-off the week of August 1, 1993, and the following week, three more employees were laid-off. No new laborers were hired during this period. (Fay Aff., ex. A—Employee Work History). The evidence presented by defendant established that there was a non-discriminatory reason for laying-off its temporary workers including the plaintiff.

Faced with a non-discriminatory reason for the discharge, it was incumbent upon Hudson to prove that defendant's explanation is pretextual. *Williams,* 871 F.2d at 457. "For the employee to disprove a legitimate, nondiscriminatory explanation for adverse action, ... he must show that the adverse action would not have occurred 'but for' the protected conduct." *Dwyer v. Smith,* 867 F.2d 184, 191 (4th Cir.1989) (citing *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365–66 (4th Cir.1985).

**2.** Fay was contracted to demolish the old Pennsylvania Station garage. Due to the nature of the job, certain phases of the demolition required more workers than other phases. It was always understood by Fay's temporary employees that once the labor intensive portions of the demolition were complete, they would be laid-off. Thus, their jobs were temporary in nature.

As noted above, Fay has presented substantial evidence that there were other legitimate, non-discriminatory reasons for plaintiff's lay-off. Plaintiff has failed to present any evidence to the contrary. Thus, this Court finds that no reasonable jury could find that plaintiff has met his burden of proof in stating his retaliatory discharge claim.

## IV. *CONCLUSION*

For the reasons stated above, defendant's motion for summary judgment will be GRANTED by a separate order.